## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**    **Donshekie Barrett**                            **Case No. 25-51624-KMS**
         **, Debtor**                                                **CHAPTER 11**

### CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION

The Debtor proposes this Chapter 11 Subchapter V Plan of Reorganization pursuant to 11 U.S.C. §§ 1189, 1190, 1191, and other applicable provisions of the Bankruptcy Code. This Plan is intended to address the confirmation readiness issues applicable to an individual Subchapter V debtor, including trustee administration, administrative claims, plan funding, post-confirmation reporting, feasibility, claim treatment, and discharge provisions.

### ARTICLE I

### DEFINITIONS, RULES OF INTERPRETATION, AND GENERAL PROVISIONS

**Section 1.1 – Definitions**

"Administrative Claim" means a claim entitled to priority under 11 U.S.C. §§ 503(b) or 507(a)(2), including approved professional fees, Subchapter V Trustee fees and expenses, and any other administrative expense allowed by order of the Court.

"Allowed Claim" means a Claim that is allowed pursuant to 11 U.S.C. § 502, is not disputed, contingent, or unliquidated, and has not been disallowed by order of the Court.

"Bankruptcy Code" means Title 11 of the United States Code, as amended.

"Bankruptcy Court" means the United States Bankruptcy Court in which this Chapter 11 Subchapter V case is pending.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"Claim" has the meaning provided in 11 U.S.C. § 101(5).

"Confirmation Date" means the date the Bankruptcy Court enters the Confirmation Order.

"Confirmation Order" means the order confirming this Plan.

"Consensual Confirmation" means confirmation of this Plan pursuant to 11 U.S.C. § 1191(a).

"Debtor" means the individual debtor and debtor-in-possession in this Chapter 11 Subchapter V case.

"Effective Date" means the first business day that is fourteen (14) days after entry of the Confirmation Order, unless the Confirmation Order provides a different date or unless the Debtor files a notice designating a later Effective Date.

"Estate" means the bankruptcy estate created pursuant to 11 U.S.C. § 541.

"Nonconsensual Confirmation" means confirmation of this Plan pursuant to 11 U.S.C. § 1191(b).

"Plan" means this Amended Chapter 11 Subchapter V Plan of Reorganization, including all exhibits, schedules, and amendments.

"Plan Payment Period" means the sixty (60) month period beginning on the Effective Date, unless a shorter period is required for a particular claim or unless the Court orders otherwise.

"Professional Fees" means fees and expenses of professionals employed in this case that are subject to allowance by the Bankruptcy Court.

"Subchapter V Trustee" means the trustee appointed pursuant to 11 U.S.C. § 1183.

"United States Trustee" means the Office of the United States Trustee.

**Section 1.2 – Rules of Interpretation**

Unless otherwise specified, all references to statutory sections are references to the Bankruptcy Code. Headings are for convenience only and shall not affect interpretation. The singular includes the plural, and the plural includes the singular, as the context requires.

**Section 1.3 – Controlling Effect**

To the extent of any inconsistency between this Plan and any prior order of the Court, this Plan shall control upon confirmation except as otherwise provided in the Confirmation Order or in any order that expressly survives confirmation.

**Section 1.4 – Computation of Time**

Any payment or act due on a Saturday, Sunday, or legal holiday shall be due on the next business day.

**Section 1.5 – Reservation of Rights**

Except as expressly provided herein, the Debtor reserves all rights, claims, defenses, objections, offsets, recoupment rights, and causes of action.

**ARTICLE II**

**CASE STRUCTURE, CLASSIFICATION, AND VOTING**

**Section 2.1 – Case Structure**

This is an individual debtor Subchapter V case. The Plan is an operating reorganization funded primarily from the Debtor's future earnings, future business income, and continued operation of the Debtor's business and assets. The Debtor seeks Consensual Confirmation under 11 U.S.C. § 1191(a), but the Plan includes provisions applicable if Nonconsensual Confirmation under 11 U.S.C. § 1191(b) becomes necessary.

**Section 2.2 – Unclassified Claims**

The following claims are not classified and shall receive treatment as provided in this Article:

(a) Administrative Claims. Except as otherwise agreed by the holder of such claim or ordered by the Court, each holder of an Allowed Administrative Claim shall be paid in full in cash on the Effective Date or as soon thereafter as practicable. Professional Fees shall be paid only upon allowance by order of the Court.

(b) Subchapter V Trustee Fees and Expenses. Allowed fees and expenses of the Subchapter V Trustee are Administrative Claims and shall be paid from the Debtor's postpetition and post-confirmation income. Unless otherwise ordered by the Court, Trustee fees incurred before confirmation shall be paid on the Effective Date or as soon thereafter as allowed, and Trustee fees incurred after confirmation shall be paid monthly, or on such other schedule as agreed by the Trustee and the Debtor or ordered by the Court.

(c) Priority Claims Under 11 U.S.C. § 507(a)(2), (3), (4), (5), (6), and (7). Any Allowed Priority Claim not separately classified shall be paid in full in accordance with 11 U.S.C. § 1129(a)(9), unless the holder agrees to different treatment.

**Section 2.3 – Classified Claims**

Claims are classified into Classes 1 through 15 and Class 16 as set forth in Article III. A claim shall be classified in a particular class only to the extent such claim qualifies within that class. Any remaining portion of a claim shall be separately classified and treated according to its nature.

**Section 2.4 – Impairment and Voting**

Each impaired class entitled to vote shall vote separately. Any unimpaired class shall be conclusively presumed to accept the Plan pursuant to 11 U.S.C. § 1126(f). Any class receiving

no distribution shall be deemed to reject pursuant to 11 U.S.C. § 1126(g). Except as otherwise expressly stated, the classes treated under this Plan are impaired and entitled to vote.

**ARTICLE III**

**TREATMENT OF CLAIMS AND INTERESTS**

**Class 1 – Priority Tax Claims**

Class 1 consists of all allowed priority unsecured claims entitled to priority under 11 U.S.C. § 507(a)(8), including the claim filed by the Internal Revenue Service. The Internal Revenue Service filed a proof of claim asserting a total claim of $79,892.34, of which $44,535.75 is asserted as entitled to priority status under 11 U.S.C. § 507(a)(8), and $35,356.59 is asserted as non-priority unsecured.

The allowed priority portion of the Internal Revenue Service's claim shall be paid in full, together with interest at the rate required by 11 U.S.C. § 511, assumed for plan purposes to be 8.00% per annum, in equal monthly installments of approximately $903.00 over fifty (50) months. Payments shall commence on the Effective Date and continue on the same day of each successive month until paid in full. To the extent the applicable rate under 11 U.S.C. § 511 differs, the final payment or payments may be adjusted as necessary to ensure full payment of the allowed priority claim.

To the extent any governmental unit, including the State of Mississippi or any political subdivision, files an Allowed Priority Tax Claim entitled to treatment under 11 U.S.C. § 507(a)(8), such claim shall be paid in full with interest at the rate required by 11 U.S.C. § 511 in equal monthly installments over a period not exceeding fifty (50) months, with payments commencing on the Effective Date, unless otherwise agreed. The non-priority portion of any such claim shall be treated as a general unsecured claim in Class 16.

**Class 2 – Secured Claim of Bank of America**

Class 2 consists of the allowed secured claim of Bank of America, secured by a 2019 Tiffin Phaeton motorhome (the "Collateral").

The Debtor shall retain the Collateral, and this claim shall be treated as a long-term debt pursuant to 11 U.S.C. § 1123(b)(5). The Debtor shall cure any prepetition arrearage owed to Bank of America within thirty (30) days of the Effective Date, to the extent not already current. Commencing on the Effective Date, the Debtor shall resume and continue making the regular contractual monthly payments in the amount of $2,482.84, with such payments continuing according to the original terms of the loan documents. Except as expressly provided herein with respect to cure of any arrearage, the rights of Bank of America shall remain unaltered, and the maturity date, interest rate, and all other contractual terms shall remain unchanged.

Upon completion of the cure of any arrearage and the Debtor's ongoing maintenance of the contractual payments, the claim of Bank of America shall be deemed current and shall ride through the Plan.

In the event of default, Bank of America shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before Bank of America may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 3 – Secured Claim of BMW Bank of North America**

Class 3 consists of the allowed secured claim of BMW Bank of North America, secured by a 2024 BMW 330i, VIN: 3MW69FF06R8E53212 (the "Collateral").

The Debtor shall retain the Collateral, and the claim of BMW Bank of North America shall be paid in the amount of $47,962.05, together with interest at the rate of 8.50% per annum,

in equal monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $984.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. BMW Bank of North America shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, BMW Bank of North America shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before BMW Bank of North America may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 4 – Secured Claim of Capital One Auto Finance**

Class 4 consists of the allowed secured claim of Capital One Auto Finance, secured by a 2025 GMC Sierra, VIN: 1GT4UZEY6SF300814 (the "Collateral").

The Debtor shall retain the Collateral, and the claim of Capital One Auto Finance shall be paid in the amount of $96,127.57, together with interest at the rate of 8.50% per annum, in equal monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $1,972.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. Capital One Auto Finance shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, Capital One Auto Finance shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such

default before Capital One Auto Finance may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 5 – Secured Claim of Capital One Auto Finance**

Class 5 consists of the allowed secured claim of Capital One Auto Finance, secured by a Hyundai Elantra, VIN: KMHLM4AG8PU433892 (the "Collateral").

The Debtor shall retain the Collateral, and the claim of Capital One Auto Finance shall be paid in the amount of $15,941.94, together with interest at the rate of 8.50% per annum, in equal monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $327.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. Capital One Auto Finance shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, Capital One Auto Finance shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before Capital One Auto Finance may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 6 – Secured Claim of JPMorgan Chase Bank, N.A.**

Class 6 consists of the allowed secured claim of JPMorgan Chase Bank, N.A., secured by a 2025 Mercedes-Benz GLE53, VIN: 4JGFD6BB3SB346966 (the "Collateral").

The Debtor shall retain the Collateral, and the claim of JPMorgan Chase Bank, N.A. shall be paid in the amount of $93,992.53, together with interest at the rate of 8.50% per annum, in

equal monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $1,927.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. JPMorgan Chase Bank, N.A. shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, JPMorgan Chase Bank, N.A. shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before JPMorgan Chase Bank, N.A. may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 7 – Secured Claim of DLL Finance**

Class 7 consists of the allowed secured claim of DLL Finance, secured by a 2024 Kioti Model KL4030C Tractor (the "Collateral").

The Debtor shall retain the Collateral, and the claim of DLL Finance shall be paid in the amount of $47,133.35, together with interest at the rate of 8.50% per annum, in equal monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $965.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. DLL Finance shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, DLL Finance shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before

DLL Finance may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 8 – Secured Claim of Greenwood Credit Union**

Class 8 consists of the allowed secured claim of Greenwood Credit Union, secured by a 1972 Oldsmobile Cutlass (the "Collateral").

The Debtor shall retain the Collateral, and the claim of Greenwood Credit Union shall be paid in the amount of $14,045.69, together with interest at the rate of 8.50% per annum, in equal monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $288.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. Greenwood Credit Union shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, Greenwood Credit Union shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before Greenwood Credit Union may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 9 – Secured Claim of Harley-Davidson Financial Services**

Class 9 consists of the secured claim of Harley-Davidson Financial Services arising from a loan secured by a Harley-Davidson motorcycle (the "Collateral"). The total claim is $23,642.15. Pursuant to 11 U.S.C. § 506, the claim is bifurcated into secured and unsecured portions.

The secured portion of the claim shall be allowed in the amount of $15,282.00, representing the value of the Collateral. The Debtor shall retain the Collateral, and the secured claim shall be paid in full with interest at the rate of 8.50% per annum, in equal monthly installments over sixty (60) months, with payments commencing on the Effective Date. The monthly payment shall be approximately $314.00.

The remaining balance of the claim, in the amount of $8,360.15, shall be treated as a general unsecured claim in Class 16 and shall be paid in full, without interest, in equal monthly installments over sixty (60) months. Harley-Davidson Financial Services shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, Harley-Davidson Financial Services shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before Harley-Davidson Financial Services may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 10 – Secured Claim of M&T Bank**

Class 10 consists of the secured claim of M&T Bank, secured by the Debtor's principal residence (the "Collateral").

The claim shall be treated as a long-term debt pursuant to 11 U.S.C. § 1123(b)(5). The Debtor shall cure any prepetition arrearage owed to M&T Bank on or before the Effective Date, to the extent not already current.

Commencing on the Effective Date, the Debtor shall resume and continue making the regular contractual monthly payments, currently estimated to be $2,197.58 per month, with such payments continuing according to the original terms of the loan documents. The monthly

payment amount is subject to change upon notice to the Debtor for escrow adjustments, including changes in taxes and insurance. Except as expressly provided herein with respect to cure of any arrearage, the rights of M&T Bank shall remain unaltered, and the maturity date, interest rate, and all other contractual terms shall remain unchanged.

In the event of default, M&T Bank shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before M&T Bank may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 11 – Secured Claim of Navy Federal Credit Union**

Class 11 consists of the allowed secured claim of Navy Federal Credit Union, secured by a 2025 Harley-Davidson Road Glide (the "Collateral").

The Debtor shall retain the Collateral, and the claim of Navy Federal Credit Union shall be paid in the amount of $55,806.88, together with interest at the rate of 8.50% per annum, in equal monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $1,145.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. Navy Federal Credit Union shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, Navy Federal Credit Union shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before Navy Federal Credit Union may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 12 – Secured Claim of Navy Federal Credit Union**

Class 12 consists of the allowed secured claim of Navy Federal Credit Union, secured by a 2018 Porsche Panamera (the "Collateral").

The Debtor shall retain the Collateral, and the claim of Navy Federal Credit Union shall be paid in the amount of $28,406.36, together with interest at the rate of 8.50% per annum, in equal monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $583.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. Navy Federal Credit Union shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, Navy Federal Credit Union shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before Navy Federal Credit Union may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 13 – Secured Claim of Pac Western Financial, LLC**

Pac Western Bank shall hold an allowed unsecured claim in the amount of $75,510.00. The Debtor shall pay Pac Western Bank's allowed claim in full through the Plan over sixty (60) months at zero percent (0%) interest in the amount of $1,258.50 per month. Upon Pac Western Bank's receipt of payment in full of the $75,510.00 allowed claim, Pac Western Bank shall release, cancel, and satisfy any judgment lien it holds against the Debtor or the Debtor's property arising from the underlying judgment. Pac Western Bank shall execute and file any release,

satisfaction, cancellation, or other document reasonably necessary to evidence the release of its judgment lien.

**Class 14 – Secured Claim of Synchrony Bank**

Class 14 consists of the allowed secured claim of Synchrony Bank, secured by a 2025 enclosed trailer (the "Collateral").

The Debtor shall retain the Collateral, and the claim of Synchrony Bank shall be paid in the amount of $14,009.72, together with interest at the rate of 8.50% per annum, in equal monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $287.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. Synchrony Bank shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, Synchrony Bank shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before Synchrony Bank may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 15 – Secured Claim of Synchrony Bank**

Class 15 consists of the allowed secured claim of Synchrony Bank, secured by a 2023 Vanderhall Carmel GT (the "Collateral").

The Debtor shall retain the Collateral, and the claim of Synchrony Bank shall be paid in the amount of $33,672.32, together with interest at the rate of 8.50% per annum, in equal

monthly installments over sixty (60) months. Based on that assumed interest rate, the monthly payment shall be approximately $691.00 per month for sixty (60) months.

Payments shall commence on the Effective Date and continue on the same day of each successive month until the claim is paid in full. Synchrony Bank shall retain its lien on the Collateral until the allowed secured claim is paid in full pursuant to this Plan, at which time the lien shall be released.

In the event of default, Synchrony Bank shall provide written notice of default to the Debtor and Debtor's counsel, and the Debtor shall have fourteen (14) days to cure such default before Synchrony Bank may exercise state law remedies or seek other appropriate relief, except as otherwise ordered by the Court.

**Class 16 – General Unsecured Claims**

Class 16 consists of all general unsecured claims against the Debtor.

Each holder of an allowed general unsecured claim shall be paid in full, without interest, in equal monthly installments over a period of sixty (60) months, with payments commencing on the Effective Date. Payments shall be made by the Debtor, as debtor-in-possession, except as otherwise provided herein or ordered by the Court.

The following general unsecured claims have been filed, are allowed for purposes of this Plan, and shall be paid in full over sixty (60) months at zero percent (0.00%) interest:

| Creditor Name | Total Claim Amount |
|---|---|
| **Internal Revenue Service** | $35,356.59 |
| **Harley-Davidson Financial Services** | $8,360.15 |
| **Ally** | $42,185.34 |
| **American Express (POC 10)** | $1,809.2 |
| **American Express (POC 11)** | $7,744.74 |

| | |
|---|---|
| **American Express (POC 12)** | $2,685.34 |
| **Citizens Bank N.A.** | $2,133.24 |
| **First National Bank of Omaha** | $7,3149.26 |
| **Headway** | $55,298.12 |
| **Midland** | $161,769.68 |
| **Navy Federal Credit Union (POC 14)** | $7,314.21 |
| **Navy Federal Credit Union (POC 29)** | $1,770.64 |
| **Navy Federal Credit Union (POC 15)** | $1,770.64 |
| **ODK Capital LLC** | $98,004.75 |
| **OneMain Financial** | $9,514.92 |
| **UniSource Capital** | $9,336.16 |
| **Keystone (to be allowed upon amendment for deficiency claim after disposing of collateral)** | $82,234.12 |

A creditor whose claim is listed in the Debtor's schedules as undisputed, noncontingent, and liquidated is not required to file a proof of claim unless the creditor disagrees with the amount, classification, or treatment of its scheduled claim. Such a claim will be treated as filed in the amount stated in the Debtor's schedules, subject to any objection or other order of the Court.

A creditor whose claim is not scheduled, or is scheduled as disputed, contingent, or unliquidated, must timely file a proof of claim to be entitled to vote on the Plan or receive a distribution under the Plan. If such a creditor does not timely file a proof of claim, the creditor will receive no distribution under the Plan on account of that claim and will not be treated as a creditor for purposes of voting or distribution.

Upon entry of the Debtor's discharge, any prepetition claim that is subject to discharge will be discharged regardless of whether a proof of claim was filed, allowed, or paid under the Plan. Accordingly, a creditor holding a claim scheduled as disputed, contingent, or unliquidated that fails to timely file a proof of claim will receive no payment under the Plan, and the underlying debt will be discharged to the extent provided by the Bankruptcy Code and the confirmation order.

Notwithstanding the foregoing, with respect to any claim for which the Court has entered an order disallowing the claim, including but not limited to claims subject to orders entered at Docket Nos. 43, 44, and 45, no distribution shall be made unless and until a new or amended proof of claim is timely filed in accordance with the terms of such order and allowed by the Court. If no such claim is filed and allowed, the claim shall receive no distribution and shall be discharged to the fullest extent permitted by applicable law.

## ARTICLE IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

**Section 4.1 – Continued Operation and Case Structure**

The Debtor shall remain in possession of all property of the estate and shall continue operating the Debtor's business and managing the Debtor's financial affairs as debtor-in-possession pursuant to 11 U.S.C. §§ 1184 and 1185 unless otherwise ordered by the Court. This Plan is not a liquidating plan. If the Debtor sells any material asset during the Plan term, the Debtor shall comply with the Bankruptcy Code, the Bankruptcy Rules, and any applicable order of the Court.

**Section 4.2 – Source of Plan Funding**

Funding for the Plan shall be derived from the Debtor's future earnings, future business income, income generated from the continued operation of the Debtor's business and assets, and any non-exempt or non-encumbered proceeds available for plan funding.

**Section 4.3 – Plan Payments and Distribution Method**

Unless otherwise specifically provided herein or ordered by the Court, all payments required under this Plan shall be made directly by the Debtor beginning on the Effective Date.

**Section 4.4 – Administrative Claim Funding**

Administrative Claims, including allowed Professional Fees and allowed Subchapter V Trustee fees and expenses, shall be funded from the Debtor's postpetition and post-confirmation income. The Debtor shall maintain sufficient liquidity after the Effective Date to pay Administrative Claims and the first month of Plan payments.

**Section 4.5 – Retention of Causes of Action**

Except as otherwise expressly provided herein, the Debtor retains and preserves all claims, defenses, causes of action, avoidance actions, preference claims, fraudulent transfer claims, offsets, recoupment rights, and rights of recovery existing as of the Effective Date,

including claims arising under Chapter 5 of the Bankruptcy Code. Confirmation of this Plan shall not constitute a waiver of any such rights. The Debtor shall remain the representative of the estate for purposes of pursuing or resolving retained causes of action unless the Court orders otherwise.

**Section 4.6 – Sale or Refinancing of Assets**

The Debtor reserves the right to sell, refinance, transfer, encumber, or otherwise dispose of assets in the ordinary course of business. Transactions outside the ordinary course shall require notice and approval to the extent required by the Bankruptcy Code, Bankruptcy Rules, or any order of the Court. Any resulting secured deficiency claim shall be treated as provided in Class 16 if timely asserted and allowed.

**ARTICLE V**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**Section 5.1 – Assumption and Rejection**

Except as otherwise provided herein or by separate order of the Court, all executory contracts and unexpired leases not previously rejected shall be deemed assumed upon the Effective Date pursuant to 11 U.S.C. § 365. Any executory contract or unexpired lease the Debtor intends to reject shall be identified by separate notice, plan supplement, or motion.

**Section 5.2 – Cure Obligations**

Any defaults required to be cured in connection with assumption shall be cured on terms agreed upon by the parties or as ordered by the Court. Unless a cure amount is timely disputed, the cure amount stated by the Debtor in any notice or plan supplement shall control.

## ARTICLE VI

## CLAIMS PROCEDURES

**Section 6.1 – Allowance of Claims**

A claim shall be deemed allowed only to the extent a proof of claim is timely filed and not objected to, or to the extent the claim is allowed by final order of the Court.

**Section 6.2 – Objections to Claims**

The Debtor reserves the right to object to any claim. Objections to claims may be filed on or before one hundred eighty (180) days following the Effective Date, unless extended by order of the Court. No failure to object before confirmation shall constitute allowance of a claim unless the Confirmation Order expressly provides otherwise.

**Section 6.3 – Disputed Claims**

No distributions shall be made on disputed claims unless and until such claims become Allowed Claims. If a disputed claim becomes an Allowed Claim after the Effective Date, the Debtor shall make distributions to that claimant in accordance with the treatment for the applicable class, with catch-up payments made over a reasonable period if necessary to maintain feasibility.

**Section 6.4 – Claim Register and Collateral Audit**

Before the confirmation hearing, the Debtor shall review the claims register, schedules, collateral descriptions, lien priorities, duplicate asset descriptions, and any deficiency exposure. Any disputed lien, duplicate claim, duplicate collateral description, or asserted deficiency shall be addressed by objection, stipulation, plan supplement, or further order of the Court.

**ARTICLE VII**

**FEASIBILITY, BEST INTERESTS, AND SUPPORTING DOCUMENTS**

**Section 7.1 – Feasibility Showing**

The Debtor has filed a profit and loss statement on the docket as Docket No. 78 demonstrating that the Debtor has sufficient income to fund the proposed Plan payment of $26,332.00 per month**.** Based on the Debtor's historical income, business revenue, expenses, and projected net income, the Debtor believes the Plan is feasible and that the Debtor will be able to make all payments required under the Plan.

**Section 7.2 – Financial Projections**

The Debtor relies upon the profit and loss statement filed as Docket No. 78, together with any testimony or additional evidence offered at confirmation, to establish the Debtor's projected income, expenses, and ability to make the required monthly Plan payment. The Debtor's projected disposable income is sufficient to fund the Plan and pay allowed claims as provided herein.

**Section 7.3 – Liquidation Analysis**

The Debtor concedes that a liquidation analysis would show that liquidation of the Debtor's non-exempt assets would result in payment in full of allowed unsecured claims. Accordingly, the Plan provides for payment in full of allowed unsecured claims, and the Debtor submits that the Plan satisfies the liquidation requirements of the Bankruptcy Code.

**Section 7.4 – Disposable Income**

The Debtor is committing disposable income in an amount sufficient to pay allowed claims in full through the Plan. The Debtor shall make monthly Plan payments**,** which payments are projected to be sufficient to pay all allowed claims in full as provided under the Plan. To the

extent required by 11 U.S.C. § 1191(c)(2), the Debtor commits projected disposable income, or property of equivalent value, toward Plan payments during the applicable commitment period

## ARTICLE VIII

## EFFECT OF CONFIRMATION

**Section 8.1 – Vesting of Property**

Except as otherwise provided herein, in the Confirmation Order, or as required under 11 U.S.C. § 1186, all property of the estate shall vest in the Debtor upon confirmation free and clear of claims and interests except as otherwise provided in this Plan.

**Section 8.2 – Binding Effect**

Upon confirmation, the provisions of this Plan shall bind the Debtor and all creditors pursuant to 11 U.S.C. § 1141(a), as modified by Subchapter V.

**Section 8.3 – Preservation of Liens**

Except as expressly modified herein, valid perfected liens shall survive confirmation until satisfied under the terms of this Plan, avoided by order of the Court, released by agreement, or otherwise extinguished under applicable law.

**Section 8.4 – Notice of Effective Date and Substantial Consummation**

Within seven (7) days after the Effective Date, the Debtor shall file and serve a Notice of Effective Date. Within seven (7) days after substantial consummation of the Plan, the Debtor shall file and serve a Notice of Substantial Consummation. If the Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Notice of Substantial Consummation may also request termination of the Subchapter V Trustee's service unless otherwise ordered by the Court.

**Section 8.5 – Monthly Operating Reports**

The Debtor shall file all monthly operating reports required by the Bankruptcy Code, Bankruptcy Rules, and any orders of this Court through the month in which the Effective Date occurs.

After the Effective Date, the Debtor shall not be required to file monthly operating reports unless otherwise ordered by the Court.

**ARTICLE IX**

**DISCHARGE AND INJUNCTION**

**Section 9.1 – Discharge if Confirmed Under 11 U.S.C. § 1191(a)**

If this Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the Debtor shall receive a discharge as provided by 11 U.S.C. § 1141(d), subject to all exceptions and limitations applicable to an individual Chapter 11 debtor and except as otherwise provided in the Confirmation Order.

**Section 9.2 – Discharge if Confirmed Under 11 U.S.C. § 1191(b)**

If this Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Debtor shall receive a discharge only upon completion of all payments of the Plan. The discharge shall be subject to all exceptions and limitations applicable under the Bankruptcy Code.

**Section 9.3 – Injunction**

Except as otherwise provided herein, confirmation and discharge shall operate as an injunction against collection activity to the extent provided by applicable bankruptcy law. Nothing in this Plan prevents a creditor from enforcing rights preserved under the Plan, seeking relief from the Court after default, or exercising remedies after the automatic stay or discharge injunction is no longer applicable.

## ARTICLE X

## SUBCHAPTER V TRUSTEE ADMINISTRATION

**Section 10.1 – Trustee Role and Termination**

The Subchapter V Trustee shall continue to perform those duties required under the Bankruptcy Code and any orders of the Court. If this Plan is confirmed pursuant to 11 U.S.C. § 1191(a), the service of the Subchapter V Trustee shall terminate upon substantial consummation of the Plan, unless otherwise ordered by the Court. If this Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Subchapter V Trustee shall continue serving after confirmation and shall continue performing such duties as required by the Bankruptcy Code until completion of Plan payments, entry of discharge, dismissal, conversion, or further order of the Court.

**Section 10.2 – Trustee Fees and Fee Applications**

Allowed fees and expenses of the Subchapter V Trustee shall be treated as Administrative Claims. The Subchapter V Trustee shall file any final or interim fee application by the deadline established in the Confirmation Order, or if no deadline is established, within thirty (30) days after substantial consummation in a consensual case or within thirty (30) days after completion of payments, dismissal, conversion, or further order of the Court in a nonconsensual case. The Debtor shall pay allowed Trustee fees from postpetition or post-confirmation income on the schedule provided in Article II or as otherwise ordered by the Court.

## ARTICLE XI

## DEFAULT AND REMEDIES

**Section 11.1 – Default**

A default shall occur if the Debtor fails to make payments required under this Plan or otherwise materially breaches its provisions.

**Section 11.2 – Notice and Opportunity to Cure**

Unless otherwise provided for a particular class, a creditor asserting default shall provide written notice of default to the Debtor and Debtor's counsel. The Debtor shall have fourteen (14) days to cure monetary defaults and thirty (30) days to cure nonmonetary defaults.

**Section 11.3 – Remedies Upon Default**

If a default is not cured, the affected creditor may seek appropriate relief from the Bankruptcy Court, including stay relief, dismissal, conversion, enforcement of Plan provisions, or other available relief. No creditor may exercise remedies inconsistent with the Plan, the Confirmation Order, or applicable bankruptcy law without first obtaining any relief required by the Bankruptcy Court.

## ARTICLE XII

## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction after confirmation to resolve claim objections; interpret and enforce Plan provisions; enter orders necessary for consummation; resolve disputes regarding implementation; determine requests for fees and expenses; address defaults under the Plan; adjudicate retained causes of action; determine discharge issues; consider requests for final decree; and enter such orders as may be necessary to carry out the provisions of this Plan.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

**Section 13.1 – Modification**

The Debtor reserves the right to modify this Plan pursuant to applicable provisions of the Bankruptcy Code.

**Section 13.2 – Governing Law**

Except where superseded by federal bankruptcy law, Mississippi law shall govern interpretation and enforcement of this Plan.

**Section 13.3 – Severability**

If any provision of this Plan is determined unenforceable, the remaining provisions shall remain in full force and effect.

**Section 13.4 – Plan Supplements and Exhibits**

The Debtor may file plan supplements, exhibits, liquidation analyses, financial projections, updated claim summaries, and other supporting documents before confirmation. Such documents shall be incorporated into the confirmation record and may be considered in determining feasibility, best interests of creditors, disposable income, and compliance with Subchapter V.

Respectfully submitted,

By:     /s/ Thomas C. Rollins, Jr.
        Thomas C. Rollins, Jr. (MSBN 103469)
        The Rollins Law Firm
        P.O. Box 13767
        Jackson, MS 39236
        601.500.5333
        trollins@therollinsfirm.com
        Attorney for Donshekie Barrett